**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**


THOMAS FULLER,

         Plaintiff,

*v.*

CHRISTOPHER ROGNER, Deputy;
JOSHUA HERMAN, Tuscola County Deputy;
DUTCHER, Deputy; BRIAN HARRIS, Deputy;
SWARTZ, Deputy; MITIN, Officer;
JOSEPH E. AMEND; MARK E. REENE;
TOM KERN, Sheriff; and
TUSCOLA COUNTY;

         Defendants.

_____/

CASE NO. 06-CV-14352

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON**
**DEFENDANT CHRISTOPHER ROGNER'S MOTION FOR SUMMARY JUDGMENT**
**AND COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**(Dkts. 29, 48)**


## I.    RECOMMENDATION

      For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' motions for

summary judgment be **GRANTED IN PART and DENIED IN PART** as follows:  1) that

summary judgment be GRANTED to Defendants Schwartz, Tuscola County, Reene and Amend

with regard to all claims and that these four defendants be dismissed from the suit; (2) that

summary judgment be GRANTED to all defendants on Plaintiff's unreasonable seizure claim; and

(3) that the motions for summary judgment be DENIED in all other respects.

## II.    REPORT

### A.    Introduction and Facts

This *pro se* prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 was referred by United States District Judge Thomas L. Ludington to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b).  (Dkt. 17.)  Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently housed at the Ojibway Correctional Facility in Marenisco, Michigan.  Defendant Rogner's motion for summary judgment (Dkt. 29) was filed on February 22, 2007, and on May 9, 2007, the County Defendants (consisting of Defendants Kern, Herman, Dutcher, Harris, Schwartz[1], Reene, Amend, and Tuscola County), filed their motion for summary judgment.  (Dkt. 48.)  Plaintiff responded (Dkts. 55, 58) and Defendants replied.  (Dkts. 56, 57.)  The only defendant that has not filed a dispositive motion is Defendant Mitin; therefore, in this Report, reference to "all Defendants" impliedly excepts Defendant Mitin.  Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), these motions are ready for Report and Recommendation on the pleadings without oral argument.

The facts are largely undisputed although the characterizations given the facts by the parties vary greatly.  On September 3, 2003, a store clerk at the Watrousville Market in Watrousville, Michigan, called 911 to report a sexual assault.  (Dkt. 29, Ex. C, Trial Transcript at 99.)  The clerk reported that Plaintiff Thomas Fuller had been in the market and had touched her breast and moved it approximately one inch from its normal position.  (*Id.* at 98.)  Since Plaintiff was a frequent customer at the market, the clerk was able to identify him to the 911 dispatcher.  (*Id.* at 94, 178.)  Defendant Rogner was dispatched to the market and, while en route, was informed that there was

---

[1]Defendant Schwartz's last name is incorrectly spelled "Swartz" in the complaint and on the Court's docket.

an outstanding arrest warrant for Plaintiff based on a parole violation. (Dkt. 29, Ex. B, Prelim. Exam. Transcript at 10.) After talking with the store clerk about the alleged criminal sexual conduct, Defendant Rogner left the store to arrest Plaintiff. (Dkt. 29, Ex. C at 108, 110.) Defendant Rogner saw Plaintiff on the south side of M-81 walking into a driveway. (Dkt. 29, Ex. B at 10.)

Plaintiff alleges that he was walking toward a friend's house when "startled by a recklessly driven vehicle coming directly at [him]." (Dkt. 1, Compl., at 4, ¶ 1.) Defendant Rogner states that he simply "followed" Plaintiff and that when Plaintiff saw him, Plaintiff began to run to the back of the house and started to climb a fence. (Dkt. 29, Ex. C at 109.) Plaintiff avers, however, that Deputy Rogner was driving the vehicle in a manner that caused "gravel stones" to "ricochet[] off an abandone[d] vehicle right next to [Plaintiff]" and that he was "pelted by the flying gravel stones from Rogner's cruiser." (Dkt. 1 at 4-4a, ¶ 2.) Plaintiff further alleges that to avoid being struck by the vehicle, he jumped over a four-foot-tall fence. (*Id.* at 4a, ¶ 2.) Defendant Rogner states that he merely drove to the fence, exited the vehicle, and told Plaintiff to "stop, police, get down," and that Plaintiff "did stop," "got down" from the fence and "started to step towards [him]." (Dkt. 29, Ex. C at 109-10.) Defendant Rogner states that he then "fired a round, turned [his] body, fired a round into the grass, and called [for] back-up." (*Id.* at 110.) Defendant Rogner reiterates that "I tell him to get down, and I call him by name. He gets down and starts to come in my direction. He didn't get more than a step, maybe two, and I had my weapon drawn and leveled." (Dkt. 29, Ex. C at 111.) Plaintiff concurs that "[s]hortly after clearing the fence [he] was shoot [sic] at by the vehicle occupant [Rogner]." (Dkt. 1 ¶ 3.) Defendant Rogner indicated that he "fired into the grass . . . on the ground away from [Plaintiff], and away from the house." (Dkt. 29, Ex. C at 111.)

According to Plaintiff, however, he was "nearly struck by the bullet" and it only missed him "by inches." (Dkt. 1 ¶ 3.)

At Plaintiff's trial[2], when Officer Rogner was asked what "the purpose of firing the weapon" was, he responded that he did so "[t]o attempt to avoid a foot pursuit that could end in injury to myself or the public." (Dkt. 29, Ex. C at 111.) Defendant Rogner stated that he realized Plaintiff was running and ran after Plaintiff yelling "stop, police." (Dkt. 29, Ex. C at 112.) Plaintiff confirms that he fled "for fear of being shot and killed, making his way to a large open field." (Dkt. 1 ¶ 4.) Defendant concurs that they ended up in a "large grassy area . . . in the subdivision of Watrousville [and that his] partner [Joshua Herman] had circled around and had pulled into a driveway in front of [Plaintiff and] had exited his car, drawn his gun, and ordered [Plaintiff] . . . to stop and get on the ground." (Dkt. 29, Ex. C at 113.)

Plaintiff also agrees that he noticed another police car that was driven by Defendant Officer Herman and that Defendant Herman caught up with Plaintiff. (Dkt. 1 ¶ 4.) Plaintiff adds that Defendant Herman "ordered" him to "place his hands in the air" and that "[a]t this point in time Deputy Rogner sprayed [Plaintiff] in the eyes with pepper spray for no apparent reason." (*Id.* ¶ 5.) Defendant Rogner contends that he sprayed Plaintiff because, after he gave several commands with his weapon drawn, he holstered his weapon and told Plaintiff to get on the ground but Plaintiff responded with, "F— you." (Dkt. 29, Ex. C at 114-15.) Plaintiff states he was handcuffed and on the ground when Defendants "Rogner and Herman slammed knees into [Plaintiff's] back causing injury." (Dkt. 1 ¶ 7.) Defendant Rogner admits to having "one knee in his back, and us[ing] two hands to try and pry his one arm out from underneath him while Deputy

---

[2]Plaintiff was charged with four counts of resisting and obstructing an officer and one count of fourth degree criminal sexual conduct. (Dkt. 29, Ex. C. at 8.)

Herman was on the other side doing the same thing with the other arm." (Dkt. 29, Ex. C at 116.) Plaintiff alleges that he "was also beaten in the head, sides and back while his hair was being pulled" and that Defendant "Rogner then smashed [his] face in the dirt and the two deputies, Rogner and Herman, jerked [him] to his knees then to his feet by both his arms and hair." (*Id.* ¶¶ 7, 8.) Defendant Rogner testified that after Plaintiff "went to one knee, [] we subdued him [and] [a]fter wrestling with him a little bit on the ground we were able to get his hands back and cuffed." (Dkt. 29, Ex. C at 115.) Defendant Rogner explained that the "we" referred to himself and Defendant Herman. (*Id.*)

Plaintiff further avers that Defendant Herman transported Plaintiff to the Tuscola County jail "where Deputy Brian Harris, Swartz, Sheriff Kern, and the City of Caro Officer Mitin were waiting." (*Id.* at 4b, ¶ 9.) Although Plaintiff contends that he asked and was given assurance that he would not be harmed if he exited the vehicle, he was "immediately jumped and assaulted by Herman, Dutcher, and Harris and Kern as they dragged [him] into the jail." (*Id.* ¶¶ 10-11.) Plaintiff alleges that Defendant "Mitin assaulted [him] by hitting with his fist in the back of [Plaintiff's] head stating, 'Who's the bitch now Fuller.'" (*Id.* ¶ 12.)

Plaintiff states that he was "found not guilty by [a] jury of the charge of resisting and obstructing at the jail." (*Id.* ¶ 16.) Plaintiff contends that Defendants "Rogner and Herman committed an unreasonable seizure of [Plaintiff]" and that "Rogner, Herman, Harris, Dutcher, Sheriff Kern, Mitin, [and] Swartz, violated [his] protection against cruel and unusual punishment." (*Id.* ¶¶ 14-15.) Plaintiff also contends that his rights to "due process and compulsory process of law" were violated when exculpatory video evidence (i.e., from the party store where the chase began, the police car driven by Rogner, and the jail) was not secured for Plaintiff or his counsel. (*Id.* at 4c, ¶¶ 2-4.) Plaintiff further alleges that "911 tapes of calls into the police department as

well as Central Dispatch tapes were also requested and were destroyed by Defendant's [sic] all."
(*Id.* ¶ 5.)  Plaintiff adds that the Tuscola County Circuit Judge concluded that Plaintiff's due process rights had been violated by the failure to disclose and loss of evidence.  (*Id.* ¶ 6.)  Finally, Plaintiff avers that Defendant Rogner committed perjury when he testified that Plaintiff resisted and obstructed arrest and that such perjury violated his right to due process of law.  (*Id.*)

In this civil rights suit, Plaintiff seeks relief as follows:  "[f]or the unreasonable seizure, $100,000.00 punitive and actual for mental trauma.  For excessive force, $250,000.00 punitive and actual damage for injury to [his] back and head.  For obstruction of justice and violating [his] due process, $3,000,000.00 punitive and actual damages causing [him] to be deprived of rights to due process of law."  (*Id.* at 5.)

### B.    Governing Standards

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.


C.     **Analysis and Conclusions**

1.     **Defendants' Arguments**

In their motion for summary judgment, Defendants Tuscola County, Sheriff Kern, Deputies Herman, Dutcher, Harris, Schwartz, and Reene ("County Defendants") argue that: (1) Plaintiff

has not stated what Defendants Kern, Schwartz or the County of Tuscola did or failed to do to and thus, Plaintiff has failed to state a claim against them (Dkt. 48 at 5-6); (2) the Eighth Amendment's prohibition against cruel and unusual punishment does not apply because Plaintiff was a pretrial detainee at the time of the alleged cruelty (*id.* at 6-7); (3) Defendants Reene and Amend are entitled to absolute immunity (*id.* at 7-9); (4) Plaintiff's claims are barred by collateral estoppel (*id.* at 7-10); and (5) Plaintiff's claims are barred by the applicable statute of limitations. (*Id.* at 11-12.)      In his motion for summary judgment, Defendant Rogner argues that: (1) Plaintiff failed to plead a Fourteenth Amendment due process claim because (a) Plaintiff has not shown that Defendant Rogner ever had possession of the exculpatory evidence he claims was destroyed, nor has he shown that the evidence was subpoenaed, so he cannot establish any compulsory process claim, (b) any perjury claim is barred by absolute immunity, and (c) Defendant Rogner is entitled to qualified immunity (Dkt. 29 at 5-13); (2) Plaintiff has failed to plead a Fourth Amendment claim based on unlawful seizure because (a) Defendant Rogner had probable cause to arrest Plaintiff and (b) Rogner is entitled to qualified immunity (id. at 14-20); (3) Plaintiff has failed to plead a Fourth Amendment claim based on excessive force because (a) Plaintiff was convicted of resisting arrest, and therefore Defendant Rogner used objectively reasonable force to effectuate the arrest, and as a result Plaintiff is collaterally estopped from raising this claim, and (b)Rogner is entitled to qualified immunity (id. at 21-28); (4) Plaintiff's Eighth Amendment claim fails because (a) this right does not apply to pretrial detainees and (b) Defendant Rogner is entitled to qualified immunity (*id.* at 28-30); and (5) all claims are barred by the statute of limitations. (*Id.* at 30-33.)

## 2. Statute of Limitations

All defendants argue that Plaintiff's claims are barred by the applicable statutes of limitations. (Dkt. 29 at 30-33; Dkt. 48 at 11-12.) The County Defendants argue that Michigan's

two-year statute of limitations for assault and battery is applicable here since Plaintiff's claim sounds in excessive force. (Dkt. 48 at 12.) Defendant Rogner contends that the three-year limitation period for personal injury or general torts applies. (Dkt. 29 at 30-31.) All defendants note that, having filed the instant suit on September 7, 2007, Plaintiff failed to file suit within three years of his arrest, which occurred on September 3, 2003. Defendant Rogner contends that this failure affects all claims which accrued on the date of arrest and that the only remaining claims is that Defendant Rogner failed to disclose and destroyed evidence, which would have accrued sometime after the arrest. (Dkt. 29 at 32.) All defendants further argue that Plaintiff also failed to satisfy the limitation period because he did not serve the defendants within the three-year period as required under Michigan law. (Dkt. 29 at 31-32; Dkt. 48 at 12.) The County Defendants note that the Michigan statute was "amended in 2004 to toll the statute for 90 days if suit is filed within the limitations period, to give plaintiff time to serve the defendants. However, it was not amended until after the date of loss in this case, and the statute does not apply retroactively." (Dkt. 48 at 12.)

The statute of limitations for civil rights actions under 42 U.S.C. § 1983 is defined by state law. *Wilson v. Garcia*, 471 U.S. 261, 280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. MICH. COMP. LAWS § 600.5805(8); *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6th Cir. 2004); *Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986). Although statutes of limitations are governed by state law, the question of when civil rights claims accrue remains one of federal law. *Wallace v. Kato*, ___ U.S. ___, 127 S. Ct. 1091, 1095, ___ L. Ed. 2d ___ (2007) ("While we have never stated so expressly, the accrual date of a § 1983 cause of action is a question of federal law and is *not* resolved by reference to state law."); *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097,

1107 (6th Cir. 1995). Accrual occurs "when the plaintiff has 'a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Wallace*, 127 S. Ct. at 1095 (citations omitted). In *Wallace*, the plaintiff sought damages for his alleged unlawful arrest. The Seventh Circuit held that his § 1983 claim was time-barred because the cause of action accrued at the time of his arrest and not when his conviction was later set aside. The U.S. Supreme Court held that "the statute of limitations upon a plaintiff's § 1983 claim seeking damages for false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process," i.e., when he appeared before the examining magistrate and was bound over for trial. *Id.* at 1100, 1097.

The Court in *Wallace* also acknowledged that unlike the malicious prosecution model used in the *Heck* decision, some § 1983 claims, such as the unlawful arrest claim in *Wallace* and in the instant case, "accrue before the setting aside of – indeed, even before the existence of – the related criminal conviction." *Id.* at 1098. Nonetheless, the Court declined to "adopt a federal tolling rule" and rejected application of any equitable tolling principles. *Id.* at 1099.

Plaintiff filed the instant action on September 7, 2006.[3] He was arrested on September 3, 2003, and he appeared before a judge for a preliminary examination and was bound over for trial on September 12, 2003. (Dkt. 29 at Ex. B). The complaint is dated August 30, 2006. (Dkt. 1.) For the reasons that follow, under *Wallace*, I therefore first suggest that Plaintiff's cause of action accrued on September 12, 2003. Plaintiff's complaint is deemed filed on the date he deposited his petition to proceed *in forma pauperis* ("IFP") and the complaint with the prison mail system. *Scott*

---

[3] *See* Case No. 06-13940, Dkt. 8, Report recommending dismissal of that case as duplicative of the instant case and noting that the complaint in that case was filed on September 7, 2006; whereas, the complaint in the instant case was filed on October 3, 2006. All parties have and this Court will presume that the September 7, 2006, filing date is the relevant date for statute of limitations purposes.

*v. Evans*, 116 Fed. App'x 699, 701 (6th Cir. 2004) (unpublished) ("the complaint of a *pro se* prisoner who applies for permission to proceed IFP is deemed 'filed' for statute of limitations purposes when the petitioner deposits both the complaint and the application to proceed IFP in the prison mail system to be forwarded to the court clerk."); *Burns v. Morton*, 134 F.3d 109, 112-13 (3d Cir. 1998). This filing of the complaint and IFP petition tolls the statute of limitations. *Truitt v. County of Wayne*, 148 F.3d 644 (6th Cir. 1998). In addition, where the court is "unable to determine from the complaint filed herein when [plaintiff] actually submitted the complaint to prison authorities for mailing, [the court will] conclude that the complaint was presented no earlier than . . . the date [plaintiff] signed the complaint." *Lewis v. Fayette County Detention Center*, No. 99-5538, 2000 WL 556132, *2 (6th Cir. April 28, 2000) (unpublished).

Thus, using the date on which the complaint was signed (August 30, 2006) as the presumed date the complaint was given to prison authorities for mailing, I suggest that the claim was timely under the applicable three-year limitation period regardless of whether the claim accrued on the arrest date (September 3, 2003) or the date indicated by *Wallace* (September 12, 2003).

I note that Defendant Rogner cites *United States v. Adkins,* No. 1:01-CR-276, 2005 WL 1308055, *2 (W.D. Mich. May 27, 2005), for the proposition that Plaintiff is only entitled to the benefit of the prison mailbox rule after he has submitted a "notarized statement or declaration under penalties of perjury" which substitutes for a sworn declaration under 28 U.S.C. § 1746. (Dkt. 56 at 3, Ex. A.) Under Defendant Rogner's analysis, this failure is fatal because Defendant Rogner uses the date of the arrest as the moment the claims accrued rather than that indicated by the recent U.S. Supreme Court case of *Wallace*. The District Court in *Adkins* did not cite to any Sixth Circuit precedent for the proposition that Plaintiff is required to file a declaration but instead relied on the Eighth Circuit case of *Grady v. United States*, 269 F.3d 913, 916-17 (8th Cir. 2001).

*See also Kline v. State of Michigan*, No. 1:06-cv-776, 2007 WL 295020, *1 (W.D. Mich. Jan. 25, 2007) (citing *Adkins, Grady,* and *Price v. Philpot*, 420 F.3d 1158, 1165, n.6 (10th Cir. 2005)). I suggest that reliance on the unpublished Sixth Circuit case of *Lewis,* which does not require any declaration but presumes the date on the complaint is the date the document was placed in the prison mail system, is more sound than relying on unpublished district court cases resting on case law from other circuits. Accordingly, I suggest that the mailbox rule applies even where the prisoner does not submit a notarized statement or declaration under penalties of perjury as to the date he placed the document in the prison mail system.

Moreover, even if the Sixth Circuit were to require a declaration under penalty of perjury for the prisoner to invoke the mailbox rule, using the date when Plaintiff's complaint was actually filed (September 7, 2006), the cause of action was nonetheless timely under the applicable three-year statute of limitations because Plaintiff's claim did not accrue under *Wallace* until September 12, 2003. Accordingly, I suggest that Defendants' motions for summary judgment cannot be granted on a statute of limitations basis.

### 3.    Defendants Schwartz, Kern and Tuscola County

Defendants Schwartz, Kern, and the County of Tuscola assert that Plaintiff has failed to allege any improper conduct on their part and therefore that the complaint fails to state a claim upon which relief can be granted against them. (Dkt. 48 at 5-6.)

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the violation of a right secured by the federal Constitution or laws and (2) that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).

The complaint in this case alleges that Plaintiff was "jumped and assaulted by [Defendants] Herman, Dutcher, and Harris and Kern" but then concludes that "Rogner, Herman, Harris, Dutcher, Sheriff Kern, Mitin, [and] Swartz [sic] violated [his] protection against cruel and unusual punishment." (Dkt. 1 ¶¶ 11, 15.) Defendants argue that since Defendant Schwartz was not included in the list of individuals who allegedly assaulted him, Plaintiff has failed to state a claim against Defendant Schwartz. (Dkt. 48 at 5-6.) I agree, and therefore suggest that Defendant Schwartz is entitled to dismissal because the complaint does not allege that he in any way violated Plaintiff's rights under any federal law or statute, but that Defendant Kern is not.

Turning to Defendant Tuscola County, I suggest that Plaintiff has failed to state a claim of a federal civil rights violation. A local government is not responsible for "every misdeed of [its] employees and agents." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363 (6th Cir. 1993). A municipality is only liable when the custom or policy is the "moving force" behind the alleged deprivation of constitutional rights. *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). In order to prove municipal liability, the Sixth Circuit requires a Plaintiff to: (1) identify the municipal policy or custom, (2) connect the policy or custom to the municipality, and (3) show that his particular injury was caused by execution of that policy or custom. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). *See also Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Doe v. Clairborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996).

I suggest that Plaintiff's complaint fails to allege or identify a policy or custom, connect any policy to the county, or allege the requisite causal connection between any municipal policy or custom and the violation of constitutional rights. Therefore, I suggest that the County of Tuscola is entitled to dismissal.

### 4.    Defendants Reene and Amend

Defendants Reene and Amend contend that they are entitled to absolute immunity. (Dkt. 48 at 7-9.) Defendant Reene is the Tuscola County Prosecuting Attorney and Defendant Amend was an assistant Tuscola County Prosecuting Attorney. (Dkt. 48 at 1.) The complaint alleges that Defendants Reene and Amend failed to "secure" and provide exculpatory evidence, e.g., the video camera tapes from the convenience store and jail and the recording of the calls into central dispatch. (Dkt. 1 ¶¶ 2-6.)

"[A] prosecuting attorney will only receive absolute immunity for activities that were 'an integral part of the judicial process.'" *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003) (concluding prosecutor not entitled to absolute immunity for coercing and threatening a witness to continue to testify falsely post-trial and during administrative investigation). Since the United States Supreme Court had previously concluded that "the knowing use of false testimony and the suppression of material evidence at [a defendant's] criminal trial were 'intimately associated' with the judicial phase of the criminal process thereby triggering absolute immunity, the Court did not address what other activities might also be 'integral.'" *Id.* (quoting *Imbler v. Pachtman*, 424 U.S. 409, 413, 430, 96 S. Ct. 984, 47 L. Ed. 2d 128 (1976)). Since *Imbler*, courts have taken a "functional approach" and "have concluded that a prosecutor is protected 'in connection with his duties in functioning as a prosecutor.'" *Id.* (quoting *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). The "critical inquiry is how closely related is the prosecutor's challenged activity to his *role as an advocate* intimately associated with the judicial phase of the criminal process." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis in original). The types of activities that have been considered as within the advocacy role of the prosecutor's office such that absolute immunity applies are claims for malicious prosecution, appearance at a probable

cause hearing and before a grand jury, evaluation of evidence, preparation of witnesses for trial, and the knowing presentation of false testimony. *Spurlock*, 330 F.3d at 797-98 (citations provided therein). Similarly, the decisions to provide or withhold evidence during trial preparation, as in the instant case, is "intimately associated" with the judicial phase and is a function of his "role as an advocate." *Imbler, supra; Holloway, supra*. Consequently, I suggest that Defendants Reene and Amend are entitled to absolute immunity and thus, should be dismissed from this case.

### 5. Defendants Rogner, Herman, Dutcher, Harris, and Kern – Excessive Force and Due Process Claims

At the outset, I note that Defendants assert that the Eighth Amendment's protection from cruel and unusual punishment does not apply to Plaintiff because, at the time of the alleged violations, he was a pretrial detainee. (Dkt. 29 at 28-30; Dkt. 48 at 6-7.) Defendants are correct that courts have long recognized that, "[b]ecause the Cruel and Unusual Punishments Clause [of the Eighth Amendment] 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citations omitted). Of particular note, however, is the fact that defendants conveniently fail to mention the very next sentence in *Spencer*, which conclusively determines this issue. There, the court explains that "state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (citations omitted).[4]

Defendant Rogner next argues that Plaintiff cannot state a claim for excessive force where he was convicted of resisting and obstructing arrest. (Dkt. 29 at 26-28.) The County Defendants

---

[4]Federal pretrial detainees are also protected by the Fifth Amendment's Due Process Clause. *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005).

similarly argue that because Plaintiff was convicted of resisting and obstructing, he necessarily committed an assault and battery and thus, the officers "had the right to use force to effect his arrest [so] he is barred from re-litigating the issue here." (Dkt. 48 at 11.)  However, a defendant may be convicted of resisting and obstructing without necessarily committing an assault and battery.  For example, a knowing failure to comply with a lawful command is sufficient obstruction to satisfy the elements of the offense.  MICH. COMP. LAWS § 750.81d(7)(a); *People v. Carter*, No. 258435, 2006 WL 664170, *2 (Mich. Ct. App. Mar. 16, 2006) (sufficient evidence of obstruction existed where, as officers approached, defendant fled and was chased by officers who shouted "police" and "stop").

In Michigan, before MICH. COMP. LAWS § 750.81d was enacted, it was recognized that under MICH. COMP. LAWS § 750.479, "the right to resist an unlawful arrest was, in essence, a defense to the charge of resisting arrest, because the legality of the arrest was an element of the charge." *People v. Ventura*, 262 Mich. App. 370, 374 (2004).  Excessive force could render the arrest unlawful so it was also a defense to the charge of resisting and obstructing.  *People v. Baker*, 127 Mich. App. 297, 299 (1983).[5]  The right to resist an unlawful arrest was founded on the right of self-defense whereby the unlawful arrest was viewed as a battery against the person being unlawfully restrained.  *People v. Eisenberg*, 72 Mich. App. 106, 111 (1976); *Detroit v. Smith*, 235 Mich. App. 235, 238 (1999).  As a result, an arrestee was permitted to use "reasonable force" in reacting to the illegality of an officer's action.  *People v. Krum*, 374 Mich. 356, 361 (1965).

---

[5]In Michigan, "resisting arrest" and "resisting and obstructing" are two different offenses.  "Although the lawfulness of the arrest is an element of the former, it is not an element of the latter."  *People v. Wess*, 235 Mich. App. 241, 244 (1999).

However, under MICH. COMP. LAWS § 750.81d,[6] the lawfulness of an arrest is no longer an element of the charge of resisting and obstructing.[7] *Ventura*, 262 Mich. App. at 377. Therefore, "a person may not use force to resist an arrest made by one he knows or has reason to know is performing his duties regardless of whether the arrest is illegal under the circumstances of the occasion." *Id.* There is some question whether any form of a self-defense claim, such as in response to excessive force, remains plausible under MICH. COMP. LAWS § 750.81d. *People v. Rauch*, No. 263185, 2006 WL 3682754, *3-4 (Mich. Ct. App. , Dec. 14, 2006) (noting that claim in *Ventura* was that officer lacked the right to make a warrantless arrest, not that the officer used excessive force); *People v. Manning*, No. 251807, 2005 WL 145827, *1 (Mich. Ct. App. June 21, 2005) (finding sufficient evidence to prove beyond a reasonable doubt that defendant was not acting in self-defense because evidence could not support an honest and reasonable belief that defendant's life was in danger or that there was a threat of serious bodily harm).[8]

Although not expressly mentioned until the County Defendants' Reply Brief (Dkt. 57), the Defendants' arguments raise *Heck v. Humphrey* issues. In *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), the U. S. Supreme Court barred § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence. *Id.* at 487. However, if "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some

---

[6]Enacted in 2002.

[7]The statute provides that "an individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . ." MICH. COMP. LAWS § 750.81d. While others may have concluded that "performing his or her duties" did not include breaching those duties or performing the duties unlawfully, the *Ventura* court simply "decline[d] to 'read in' a lawfulness requirement." *Ventura*, 262 Mich. App. at 376.

[8]Citing *People v. Fortson*, 202 Mich. App. 13, 19-20 (1993), for the self-defense standard language.

other bar to the suit." *Id.* (emphasis in original). The U.S. Supreme Court specifically mentioned, by way of example, that where a "state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a *lawful* arrest, . . . [and] [h]e then brings a § 1983 action against the arresting officer, seeking damages for his Fourth Amendment right to be free from unreasonable seizures[,] [i]n order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted [r]egardless of the state law concerning res judicata . . . [and] the § 1983 action will not lie." *Id.* at n.6 (emphasis in original).

Under Michigan law, one can be convicted of the crime of resisting and obstructing even when the arrest was unlawful, i.e., even where excessive force was used. Thus, I suggest that Plaintiff's excessive force claim in this § 1983 action will not "necessarily imply the invalidity" of his prior conviction for resisting and obstructing. *Id.* at 487; *Nelson v. Campbell*, 541 U.S. 637, 647, 124 S. Ct. 2117, 158 L. Ed. 2d 924 (2004) ("we were careful in *Heck* to stress the importance of the term 'necessarily.'").

As a result, I suggest that collateral estoppel does not apply on the instant facts. *See Donovan v. Thames,* 105 F.3d 291, 295-96 (6th Cir. 1997) ("Under Kentucky law, the offense of resisting arrest does not require a finding that the police officers did not use excessive force in effecting the arrest. Therefore, a determination of the issue of excessive force was not 'necessary to uphold the judgment' . . . [and thus,]issue preclusion does not restrict [plaintiff's] excessive force claim in federal court."); *Ballard v. Burton*, 444 F.3d 391 (5th Cir. 2006) (holding that the favorable-termination requirement did not bar a § 1983 claim for excessive force because a conclusion that the defendant's use of force was objectively unreasonable would not necessarily call into question the plaintiff's criminal conviction for assault). *See also Swiecicki v. Delgado*,

463 F.3d 489, 495 (6th Cir. 2006) (applying Ohio law where the illegality of the arrest is an element of resisting arrest and holding that Plaintiff's "excessive-force claim pursuant to § 1983 would have necessarily implied the invalidity of his conviction for resisting arrest because if the amount of force used was unlawful, an essential element of the underlying offense for resisting arrest would have been negated" but "recogniz[ing] . . . that some excessive force claims would not necessarily imply the invalidity of a conviction for resisting arrest."); *Cummings v. City of Akron*, 418 F.3d 676, 683-84 (6th Cir. 2005) (holding that *Heck* barred § 1983 excessive force claim because "the struggle between [plaintiff] and the officers gave rise to both [plaintiff's] assault conviction and the excessive force claim and the two are inextricably intertwined [and plaintiff] could have raised excessive force as a defense to the assault charge, but instead he chose not to contest the charge"). *Cf. Dyer v. Lee*, 488 F.3d 876, 884 (11th Cir. 2007) (even though Florida statute required the offense of resisting to be during the "lawful execution of a legal duty," the court held *Heck* did not bar an excessive force claim where "a successful § 1983 suit and the underlying conviction [are] logically contradictory. . . [which could only occur if] no violent act of the plaintiff could be unprovoked and no excessive force by the defendants could go unanswered."); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (noting that if it were to hold that *Heck* bars excessive force claims whenever plaintiff was convicted of resisting a lawful arrest then "police subduing a suspect could use as much force as they wanted - and be shielded from accountability under civil law - as long as the prosecutor could get the plaintiff convicted on a charge of resisting."); *Thore v. Howe*, 466 F.3d 173, 180 (1st Cir. 2006) (holding that *Heck* did not automatically bar § 1983 excessive force claim where plaintiff had been convicted of assault on a police officer and where record did not permit determination whether "excessive force claim and the conviction may be so interrelated factually as to bar the § 1983 claim" but affirming lower

court decision that §1983 claim was barred by judicial estoppel because plaintiff's plea colloquy directly contradicted his assertions in the § 1983 claim).

### 6. Defendant Rogner's Motion for Summary Judgment on the Basis of Qualified Immunity

Defendant Rogner has argued that he is entitled to qualified immunity. (Dkt. 29 at 26-28.) The Supreme Court has explained that the defense of qualified immunity involves situations where "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover

evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

To determine whether an official is entitled to qualified immunity, the Sixth Circuit has instructed that:

> The first inquiry is whether the [p]laintiff has shown a violation of a constitutionally protected right; the second inquiry is whether that right was clearly established at the time such that a reasonable official would have understood that his behavior violated the right; and the third inquiry is 'whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of clearly established rights.'

*Tucker v. City of Richmond, Ky,* 388 F.3d 216, 219 (6th Cir. 2005) (quoting *Higgason v. Stephens*, 288 F.3d 868, 878 (6th Cir. 2002)). At times, this Circuit employs a two-part test. *See, e.g., Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002). The three-part test simply adds the summary judgment language requiring evidence to support the claim and encompasses the rule that when the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *See Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)).

### i. Constitutional Violation

"Under the Fourth Amendment, as we have noted, individuals . . . have a right to be free of excessive force when police make an arrest or seizure." *Lyons v. City of Xenia*, 417 F.3d 565, 575 (6th Cir. 2005) (regarding alleged unreasonably tight handcuffing). In determining whether a police officer's conduct was objectively reasonable under the circumstances, courts look at the following factors: "'(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting

arrest or attempting to evade by flight.'" *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).  To recover on a claim of excessive force, the plaintiff must show that the officer "(1) actively participated in the use of excessive force; (2) supervised the officer who used excessive force; or (3) owed the victim a duty of protection against the use of excessive force." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997).  Liability for failing to prevent the use of excessive force requires that "(1) the officer observed or had reason to know that excessive force would be or was being used, and (2) the officer had both the opportunity and the means to prevent the harm from occurring." *Id.*  "Police officers may use deadly force to prevent a criminal suspect from escaping when they have probable cause to believe that a suspect poses a threat of serious physical harm to themselves or other members of the community." *Dudley v. Eden*, 260 F.3d 722, 725 (6th Cir. 2001).

In the instant case, Defendant Rogner testified that he told Plaintiff to get down from the fence, Plaintiff "got down" from the fence and "started to step towards [him]," then he "fired a round, turned [his] body, fired a round into the grass, and called back-up." (Dkt. 29, Ex. C at 109-10.)  I suggest that a jury could find that Defendant Rogner's conduct was not objectively reasonable under the circumstances he faced.  The crime for which Plaintiff was sought was not a severe one (criminal sexual conduct fourth degree).  More importantly, Plaintiff was not armed or otherwise so dangerous that he posed an immediate threat to anyone's safety.  In addition, by all accounts he had stopped fleeing and had just begun to comply with Defendant Rogner's orders to get down from the fence and step toward him when Defendant Rogner fired his gun, either at Plaintiff (in Plaintiff's view) or into the ground (in Defendant's view).  Defendant Rogner's explanation that he fired his gun in an "attempt to avoid a foot pursuit that could end in injury to [him]self or the public" is, I suggest, considerably less than compelling.  It is difficult to imagine

that a "foot pursuit" would pose a greater threat than shots fired in a suburban neighborhood. In addition, Plaintiff has averred other allegations of excessive force which have been supported by Defendant Rogner's testimony that create an issue of fact including Defendant Rogner's admitted use of pepper spray, placing his knee in Plaintiff's back and wrestling with Plaintiff. (Dkt. 29, Ex. C at 114-15.) Therefore, I suggest the Plaintiff has alleged and supported his allegations with sufficient facts to indicate that Defendant Rogner's actions may have been objectively unreasonable. *Tucker, supra*.

### ii. Clearly established Constitutional Right

I further suggest that the right to be free from excessive force and the factors used to analyze whether force is reasonable are clearly established under the cases cited above and others. Thus, I suggest that Defendant Rogner is not entitled to qualified immunity.

### 7. Defendants Rogner, Herman, Dutcher, Harris, and Kern – Unreasonable Seizure Claim

Defendant Rogner and the County Defendants argue that Plaintiff has not stated a claim for unreasonable seizure because Defendants had probable cause to arrest Plaintiff. (Dkt. 29 at 14-20; Dkt. 48 at 7-10.) Defendants contend that collateral estoppel precludes the instant lawsuit under § 1983 because there was probable cause to arrest Plaintiff as determined at the preliminary examination and the resulting convictions for resisting and obstructing. (Dkt. 29 at 16-17; Dkt. 48 at 9-11.)

Res judicata, or claim preclusion, precludes a party or a person in privity with the party from re-litigating "issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 92 101 S. Ct. 411, 414, 66 L. Ed. 2d 308 (1980). Under collateral estoppel, or issue

preclusion, "[o]nce a court has decided an issue of fact necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* Collateral estoppel applies in civil rights actions under § 1983. *Walker v. Schaffer*, 854 F.2d 138, 142 (6th Cir. 1988). Section 1983 actions are generally not a venue for re-litigating issues that were decided or could have been decided in a prior state criminal case. *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005). State court judgments are to be given the same preclusive effect in federal court that they would be given in the issuing state court unless the party against whom the decision is asserted did not have a "full and fair opportunity" to litigate the issue in the earlier case. *Id.*; *Allen*, 449 U.S. at 92, 95, 104.

Where a criminal defendant, now a civil plaintiff, "was convicted . . . [t]hat fact necessarily establishes probable cause. Plaintiff is therefore barred from asserting that Defendants acted without probable cause, whether he makes that assertion under federal law or state law." *Jackim v. City of Brooklyn*, No. 1:05-CV-1678, 2007 WL 893868, *12 (N.D. Ohio, Mar. 22, 2007) (where plaintiff was convicted of disorderly conduct, court dismissed claims of unreasonable seizure, deprivation of liberty and unlawful restraint); *see also McCartt v. Keyes*, 194 F.3d 1313 (6th Cir. 1999) (holding that plaintiff's nolo contendere plea to a charge of disorderly conduct precluded him from later bringing a claim under § 1983 for unreasonable seizure where claim based on lack of probable cause).

Michigan law governing collateral estoppel is essentially the same. Collateral estoppel bars re-litigation of an issue that was "essential to the resulting judgment" where the basis of the former judgment can be "clearly, definitely, and unequivocally ascertained." *Bd. of Co. Rd. Comm'rs for the Co. of Eaton v. Schultz,* 205 Mich. App. 371, 377 (1994). *See also Ditmore v. Michalik*, 244 Mich. App. 569, 578 (2001).

In the instant case, Plaintiff was provided the opportunity to fully and fairly litigate the issue of probable cause in the state court preliminary examination and subsequent trial where he was convicted of assault and battery, criminal sexual conduct fourth degree, and two counts of resisting and obstructing. Stated alternatively, the state court bind-over and conviction definitely relied on the essential finding of probable cause to arrest Plaintiff. (Dkt. 29 at Exs. B, C.) Besides the events of that day giving rise to probable cause to arrest Plaintiff, I note that the officers also had probable cause to arrest Plaintiff based on an outstanding parole violation arrest warrant. (Dkt. 29, Ex. B at 10.)

Accordingly, I suggest that Plaintiff's cause of action for unreasonable seizure based on a lack of probable cause is precluded by collateral estoppel.

## 8. Conclusion

For all the reasons stated above, I suggest that the motions for summary judgment be granted as to Plaintiff's unreasonable seizure claim, that summary judgment be granted as to Defendants Schwartz, Tuscola County, Reene, and Amend with regard to all claims, but that the motions for summary judgment be denied in all other respects.

## III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

 s/ Charles E Binder

CHARLES E. BINDER
Dated: November 6, 2007                    United States Magistrate Judge


## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James L. Dyer, Michael W. Edmunds, Peter W. Peacock, and on Thomas Fuller by first class mail, and served on U.S. District Judge Ludington in the traditional manner.


Date: November 6, 2007          By     s/Patricia T. Morris
                                       Law Clerk to Magistrate Judge Binder