UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THOMAS FULLER,

    Plaintiff,

CASE NO. 06-CV-14352

v.

DISTRICT JUDGE THOMAS LUDINGTON
MAGISTRATE JUDGE CHARLES BINDER

CHRISTOPHER ROGNER, Deputy;
JOSHUA HERMAN, Tuscola County Deputy;
DUTCHER, Deputy; BRIAN HARRIS, Deputy;
MITIN, Officer; and TOM KERN, Sheriff,

    Defendants.
_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT MITIN'S MOTION FOR SUMMARY JUDGMENT
(Doc. 82)

### I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Mitin's motion be **GRANTED** and that the 14th Amendment cruel and unusual punishment claim against Defendant Mitin be dismissed. **IT IS FURTHER RECOMMENDED** that Defendant Mitin not be terminated from the case because the 14th Amendment due process claim made against him was not addressed in the motion and thus remains at issue.

### II.    REPORT

    **A.    Introduction and Facts**

This *pro se* prisoner civil rights case brought pursuant to 42 U.S.C. § 1983 was referred by United States District Judge Thomas L. Ludington to the undersigned Magistrate Judge for pretrial case management pursuant to 28 U.S.C. § 636(b). (Doc. 17.) Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC") and is currently housed at the Ojibway

Correctional Facility in Marenisco, Michigan. All the other defendants, except Defendant Mitin, previously filed dispositive motions which were the subject of a Report and Recommendation ("R&R") and which were granted in part and denied in part by Order of United States District Judge Ludington on February 26, 2008.[1] (Doc. 63.) An order setting deadlines, filed September 16, 2009, required that any additional dispositive motions be filed on or before December 31, 2009. (Doc. 81.) The instant motion for summary judgment was filed on December 30, 2009 (Doc. 82), but no response has been filed to the motion.[2] Upon review of the documents, I conclude that pursuant to E.D. Mich. LR 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

The background facts are summarized in the previously-filed R&R and need not be repeated here. The specific factual allegation against Defendant Mitin is that after he arrived at the Tuscola County Jail on September 3, 2003, Defendant "Mitin assaulted [Plaintiff] by hitting with his fist in the back of [Plaintiff's] head stating, 'Who's the bitch now Fuller.'" (Compl., Doc. 1 ¶ 12.)

Pursuant to the order granting various Defendants' motions for summary judgment in part and denying them in part (Doc. 63), the remaining claims are: (1) against Defendant Rogner: 4th Amendment excessive force; (2) against Defendants Herman, Dutcher, Harris, Mitin, and Kern: 14th Amendment cruel and unusual punishment and 14th Amendment due process claim that exculpatory evidence, i.e., videotapes from the party store where the chase began, the police car driven by Defendant Rogner, the jail, and "911 tapes of calls into the police department as well as Central Dispatch tapes were also requested and were destroyed by Defendant's [sic] all." (Doc.

---

[1] Defendants Swartz, Amend, Reene, and Tuscola County were dismissed on February 26, 2008. (Doc. 63.)

[2] I note that Plaintiff is represented by counsel who was appointed on February 9, 2009, filed an appearance on April 14, 2009, and participated in discovery since that date.

64; Compl., Doc. 1 at 4c, ¶¶ 2-4, 5.)  Defendant Mitin's motion challenges only the 14th Amendment cruel and unusual punishment claim.

B.  **Governing Standards**

A motion for summary judgment will be granted under Rule 56(c) of the Federal Rules of Civil Procedure where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  All facts and inferences must be viewed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).  In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence.  *Matsushita*, 475 U.S. at 587-88.  Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof.  *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist.  *Street*, 886 F.2d at 1479-80.  Instead, the court will rely upon the "facts presented and designated by the moving party."  *Guarino v. Brookfield Twp.*

*Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit has explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

### C. Analysis and Conclusions

#### 1. Defendants' Arguments

In his motion for summary judgment, Defendant Mitin argues that: (1) Plaintiff's complaint should be dismissed because the summons expired before service was waived or accomplished as to Defendant Mitin; thus, personal jurisdiction over Defendant Mitin is lacking and the complaint should be dismissed even though any re-filing of the complaint would be barred under the statute of limitations (Doc. 82 at 14-17);[3] (2) Plaintiff's claim that his 14th Amendment right against cruel and unusual punishment was violated fails as a matter of law or, in the alternative, Defendant Mitin is entitled to qualified immunity. (Doc. 82 at 17-20.) As noted, Defendant Mitin's motion does not address the due process claim regarding the destruction of exculpatory evidence.

---

[3]Defendant Mitin's logic following the assertion that service was not accomplished in the requisite 120 days is less than clear; however, to the extent that he may be contending that the statute of limitations was not met in this case as filed, the statute of limitations issue was raised and rejected in the previous R&R as adopted by the district court. (Docs. 59, 63.) The same analysis would apply to Defendant Mitin.

4

## 2. Lack of Personal Jurisdiction

Pursuant to Rule 4(c)(1) of the Federal Rules of Civil Procedure, "[t]he plaintiff is responsible for service of a summons and complaint within the time allowed under subdivision (m) and shall furnish the person effecting service with the necessary copies of the summons and complaint." FED. R. CIV. P. 4(c)(1). Rule 4(m) provides as follows:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).

When managing cases involving *pro se* litigants, the Court must take into consideration the difficulties an individual faces in bringing forward their case without the benefit of legal representation. However, the Court must also balance a defendant's right to a fair and timely resolution of the litigation, and therefore *pro se* litigants are not to be accorded any special consideration when they fail to adhere to readily-comprehended court deadlines. *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991).

However, Rules 12(b)(1) and (b)(5) of the Federal Rules of Civil Procedure provide that the defenses of lack of personal jurisdiction or insufficient service of process "must be made before pleading if a responsive pleading is allowed." Rule 12(h) provides that a party "waives any defense listed in 12(b)(2)-(5) by: . . . (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading . . . ." In the instant case, Defendant Mitin's responsive pleading, i.e., answer to the complaint, raises five affirmative defenses but makes no mention of lack of personal jurisdiction or insufficient service of process. (Doc. 42.) Consequently, this

argument was waived and cannot serve as grounds for relief in this summary judgment motion. *See Fisher v. Merryman*, 32 Fed. App'x 721, 723 (6th Cir. 2002).

### 3. Cruel and Unusual Punishment

Defendant Mitin contends that he is entitled to qualified immunity. (Doc. 82 at 17-20.) The Supreme Court has explained that, pursuant to the defense of qualified immunity,"government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). The rationale underlying the doctrine is that "an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* Qualified immunity further recognizes that "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation he confronts. 'If the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.'" *Greene v. Barber*, 310 F.3d 889, 894 (6th Cir. 2002) (quoting *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)).

The defense of qualified immunity "can be raised at various stages of the litigation including at the pleading stage in a motion to dismiss, after discovery in a motion for summary judgment, or as an affirmative defense at trial." *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994) (citing *Kennedy v. City of Cleveland*, 797 F.2d 297, 299-300 (6th Cir. 1986)). When raised after discovery, "the defendant is entitled to summary judgment if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed those acts." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985).

When a defendant moves for summary judgment on the basis of qualified immunity, the analysis involves three inquiries: (1) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (2) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (3) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (quoting *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003)).

In deciding qualified immunity questions, courts were for some years required to address these inquiries in sequential order. *See Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005); and *Klein v. Long*, 275 F.3d 544 (6th Cir. 2001) (both citing *Saucier*, 533 U.S. at 201). However, the sequential approach is no longer mandated; trial judges are now permitted to use their sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, ___U.S.___, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009).

The Supreme Court has also clarified the interplay between qualified immunity and the summary judgment standards found in Rule 56(c) of the Federal Rules of Civil Procedure:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of

7

> the facts for purposes of ruling on a motion for summary judgment. . . . Respondent's version of the events is so utterly discredited by the record that no reasonable jury could have believed him [so] [t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Once the defense of qualified immunity is raised, the burden rests with the plaintiff to show that the defendant is not entitled to qualified immunity. *Curry v. School Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 734 (E.D. Mich. 2006) (citing *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006)). The court must only consider the facts known to the officers at the time the conduct was undertaken. *Hale v. Kart*, 396 F.3d 721, 728 (6th Cir. 2005).

As noted in the previous R&R, "[b]ecause the Cruel and Unusual Punishments Clause [of the Eighth Amendment] 'is concerned' with punishment by the state 'after it has secured a formal adjudication of guilt in accordance with due process of law,' it does not apply to pretrial detainees." *Spencer v. Bouchard*, 449 F.3d 721, 727 (6th Cir. 2006) (citations omitted). However, "state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, which provides similar if not greater protections than the Cruel and Unusual Punishments Clause." *Id.* (citations omitted).[4]

It is beyond dispute that, as a general proposition, an inmate's rights under the Eighth and Fourteenth Amendments are violated when government entities or officials are deliberately indifferent to his medical needs or his safety. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). "A prison official violates the Eighth Amendment only when . . . [f]irst, the

---

[4]Federal pretrial detainees are also protected by the Fifth Amendment's Due Process Clause. *Daniels v. Woodside*, 396 F.3d 730, 735 (6th Cir. 2005).

deprivation alleged must be, objectively, 'sufficiently serious' [and] [s]econd, when the offending conduct itself is not a criminal penalty. It is the 'unnecessary and wanton' infliction of pain that implicates the Eighth Amendment . . . [t]hus, a prison official will be liable under the Eighth Amendment for failing to protect an inmate only if the official acted with 'deliberate indifference.'" *Davis v. Brian*, No. 98-1810, 1999 WL 503522, *3 (6th Cir. July 9, 1999) (unpublished) (internal citations omitted). "Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992).

In the context of prison discipline, Plaintiff must prove an unnecessary and wanton infliction of pain or the infliction of pain without penological justification. *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981). Under the objective inquiry in this context, the question is whether "contemporary standards of decency" have been violated. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* Thus, a prisoner need not prove a significant injury. *Moore v. Holbrook*, 2 F.3d 697, 701 (6th Cir. 1993). Under the subjective component, the inquiry involves "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). Toward that end, "officials confronted with a prison disturbance must balance the threat unrest poses to inmates, prison workers, administrators, and visitors against the harm inmates may suffer if guards use force." *Hudson*, 503 U.S. at 6.

Courts are to keep in mind that "corrections officials must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" *Id.* (quoting *Whitley,* 470

9

U.S. at 320.) The factors to be analyzed when considering the conduct of prison officials are: (1) the need for the application of force; (2) the relationship between the need for force and the amount used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of the forceful response; and (5) the extent of the injury inflicted. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321. This analysis must be made in harmony with the Supreme Court's admonition that courts should defer to prison officials as they attempt to maintain order and discipline within dangerous institutional settings. *Whitley*, 475 U.S. at 321-22. Physical restraints are constitutionally permissible where there is a penological justification for their use. *Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 677750, *1 (6th Cir. Feb. 15, 1996). In addition, it should be noted that maximum-security prisoners are "'not usually the most gentle or tractable of men and women.'" *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In the instant case, Plaintiff alleges that after he was transported to the Tuscola County Jail, Defendant "Mitin assaulted [him] by hitting with his fist in the back of [Plaintiff's] head stating, 'Who's the bitch now Fuller.'" (Compl., Doc. 1 at ¶ 12.) I note that in his deposition testimony, Plaintiff stated that the "officer hit me in the back of the head with his fist and smashed my face into the cement wall. And I said something, 'Oh, ain't you a tough guy.'" (Doc. 82, Ex. 3 at 5.) Defendant Mitin argues that Plaintiff "did not see Officer Mitin before he was allegedly sucker punched in the back of the head," but rather "only *thought* Officer Mitin was present at the jail because he heard testimony from two Sheriff's Department officials at his criminal trial, who believed that Mitin might have been there . . . [however,] Mitin, himself, does not believe he was there." (Doc. 82 at 18.) Defendant Mitin further points out that since Plaintiff "agrees that he suffered no injury from this action . . . that no doctor has told him that his conduct contributed to

10

his back pain or blurry vision, the two injuries he claims occurred as a result of the alleged assault at the jail . . . Plaintiff <u>himself</u> does not believe this conduct contributed to his back or vision problems . . . [and thus] the conduct attributed to Officer Mitin was no more than *de minimis* force, and did not violate Plaintiff's constitutional rights . . . ." (Doc. 82 at 19-20.)

Defendant Mitin proffers Plaintiff's statements from his deposition testimony, where Plaintiff stated that he did not know who hit him in the back of the head, but he knows that "[i]t was a Caro officer. I seen his badge. I know it was him, you know, whoever it was there and they said it was him." (Doc. 82, Ex. 3 at 6.) Plaintiff indicated that he learned of Defendant Mitin's identity either in the police report or the state court trial transcript. (*Id.*) Plaintiff further indicated that he would recognize the officer if he were to see him again because after he was punched, he "looked straight at his face before he walked out the door" and that this person was "pudgy" and was about the same height as he is, i.e., six feet tall. (*Id.*) Plaintiff further stated that after that evening, he never saw that officer again. (*Id.* at 7.)

Defendant Mitin also proffers his own affidavit and the Activity Log for the Caro Police Department indicating that he was not at the Tuscola County Jail at the time Plaintiff was brought there. (Doc. 82, Exs. 1, 2.) Plaintiff was arrested at 8:00 p.m. and booked at 8:15 p.m. on September 3, 2003. (Doc. 82 at Ex. 3.) On September 3, 2003, the activity log indicates that Defendant Mitin was conducting an interview at 8:00 p.m. and gave a verbal warning to a motorist at M-81 and Amber Street at 8:50 p.m. (Doc. 82, Ex. 1 at 2; Ex. 3 at 5.)

Plaintiff offers no evidence opposing the evidence submitted by Defendant Mitin. I therefore suggest that Plaintiff has not met his burden to come forward with evidence to defeat the properly-supported motion for summary judgment under the less exacting summary judgment standards where qualified immunity has not been raised as a defense. *See Street, supra*. I further

suggest that since the defense of qualified immunity has been raised, Plaintiff has failed to meet the burden he carries to show that Defendant Mitin is not entitled to qualified immunity. *See Curry, supra.* Plaintiff has not shown more than a mere "metaphysical doubt as to the material facts," especially where, as here, "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party;" therefore, "there is no 'genuine issue for trial.'" *Scott,* 550 U.S. at 380. Finally, I suggest that even if Plaintiff had responded, the objective record evidence reveals that Defendant Mitin could not have been the Caro officer alleged to have stricken Plaintiff in the head such that any countervailing version of events would be "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.*

### 4. Conclusion

For all the reasons stated above, I suggest that the motion for summary judgment be granted based on Plaintiff's failure to show that Defendant Mitin is not entitled to qualified immunity as to the 14th Amendment cruel and unusual punishment claim. However, since the motion did not address the 14th Amendment due process claim, I suggest that this claim remains and thus, Defendant Mitin should not be terminated from the case.

### III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the

12

objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97.

                                                      s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗

                                                  CHARLES E. BINDER
Dated: February 17, 2010                    United States Magistrate Judge


**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and electronically served on counsel of record via the Court's ECF System.

Date: February 17, 2010        By    s/Patricia T. Morris
                                                     Law Clerk to Magistrate Judge Binder